UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALGONQUIN GAS TRANSMISSION, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>APPROXIMATELY 170,197 CUBIC FEET and APPROXIMATELY 8,248 LINEAR FEET OF PERMANENT EASEMENT AREA, and APPROXIMATELY 652,489 SQUARE FEET OF TEMPORARY EASEMENT AREA IN THE CITY OF BOSTON, MASSACHUSETTS, THE BOSTON PUBLIC IMPROVEMENT COMMISSION, and THE CITY OF BOSTON, MASSACHUSETTS,<br><br>    Defendants. | No. 15-cv-12870-WGY |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S AUTHORITY TO TAKE PERMANENT AND TEMPORARY EASEMENTS**

  Algonquin Gas Transmission, LLC ("Algonquin") submits this memorandum in support of its motion for partial summary judgment. Algonquin has the power of eminent domain under the Natural Gas Act ("NGA"), 15 U.S.C. § 717 *et seq*. Algonquin seeks an order allowing it to take permanent and temporary easements for the installation of a natural gas pipeline in three streets in the West Roxbury neighborhood of the City of Boston.

## FACTS

### *Parties*

  Algonquin is an interstate natural gas pipeline company that transports natural gas in interstate commerce. As such, Algonquin is a "natural gas company" as that term is defined in Section 2(6) of the Natural Gas Act ("NGA"), 15 U.S.C. § 717a(6), and is subject to the exclusive jurisdiction of the Federal Energy Regulatory Commission ("FERC"). (Affidavit of

Franklin S. Gessner in Support of Plaintiff's Motion for Partial Summary Judgment ("Gessner Affid."), ¶ 1).

The City of Boston is a Massachusetts municipality and has its offices at City Hall, One City Hall Square, Boston, Massachusetts. The Boston Public Improvement Commission ("PIC") is the owner and regulator of the City's streets and/or rights of way. (Affidavit of James M. Behnke in Support of Plaintiff's Motion for Partial Summary Judgment ("Behnke Affid."), ¶ 7; a copy of a page from the PIC website in which makes that statement is attached as Exhibit A to Behnke's Affid.).

### *The AIM PROJECT*

Before a natural gas company like Algonquin can construct and operate a natural gas transmission pipeline and any related facilities, the company must obtain a Certificate of Public Convenience and Necessity from FERC ("Certificate"). (Gessner Affid., ¶ 4). On March 3, 2015, FERC issued a Certificate authorizing Algonquin to construct and operate a natural gas pipeline project known as the Algonquin Incremental Market Project (the "AIM Project"). (Gessner Affid., ¶ 5; a copy of the Certificate is attached as Exhibit A to Gessner's Affid.).

The AIM Project involves the replacement of approximately 29.2 miles of existing pipeline, the installation of 8.2 miles of new pipeline, the upgrading of six (6) existing compressor stations, the construction of three (3) new metering stations, and the modification of numerous existing metering facilities in New York, Connecticut, Rhode Island, and Massachusetts. (Gessner Affid., ¶ 6).

Algonquin has entered into binding agreements with eight local distribution companies and two municipal utilities (collectively, the "Project Shippers") for the transport of natural gas. Those Project Shippers are Bay State Gas Company; Boston Gas Company; Colonial Gas

Company; Connecticut Natural Gas Corporation; Middleborough Gas and Electric; The Narragansett Electric Company; Norwich Public Utilities; NSTAR Gas Company; The Southern Connecticut Gas Company; and Yankee Gas Services Company. (Gessner Affid., Exhibit A, p. 4, n.4). The AIM Project will enable Algonquin to transport up to 342,000 dekatherms per day of natural gas from facilities in New York to the Project Shipper's delivery points in Connecticut, Rhode Island, and Massachusetts. (Gessner Affid., Exhibit A, p. 1).

### *The West Roxbury Lateral*

As part of the AIM Project, Algonquin will install approximately 4.1 miles of 16-inch diameter pipeline and approximately 0.8 miles of 24-inch diameter pipeline in the Towns of Westwood and Dedham and the West Roxbury section of the City of Boston. This 4.9 mile section of the AIM Project is referred to as the West Roxbury Lateral. (Gessner Affid., ¶ 7).

To complete construction of the AIM Project in accordance with the Certificate and along the approved alignment, Algonquin must acquire permanent and temporary easements in three streets that are owned by the PIC. Those streets are Washington Street, Grove Street, and Centre Street ("West Roxbury Streets"). (Gessner Affid., ¶ 8).

### *Easements - Washington Street*

The permanent easement in which the pipeline will be installed in Washington Street will consist of a cylindrical area that is five (5) feet in diameter, will be approximately three to five feet below the surface, will be approximately 1,929 linear feet in length, and will occupy approximately 37,876 cubic feet. The temporary workspace easement in Washington Street will occupy approximately 144,792 square feet. The approximate boundaries of the permanent and temporary easements in Washington Street are depicted on Drawing Nos. LD-P-8183 - 8186. (Gessner Affid., ¶¶ 9-11; copies of those drawings are attached as Exhibit B to Gessner's Affid.).

### *Easements - Grove Street*

The permanent easement in which the pipeline will be installed in Grove Street will consist of a cylindrical area that is five (5) feet in diameter, will be approximately three to five feet below the surface, will be approximately 2,677 linear feet in length, and will occupy approximately 52,563 cubic feet. The temporary workspace easement in Grove Street will occupy approximately 156,464 square feet. The approximate boundaries of the permanent and temporary easements in Grove Street are depicted on Drawing Nos. LD-P-8187 - 8192. (Gessner Affid., ¶¶ 12-14; copies of those drawings are attached as Exhibit C to Gessner's Affid.).

### *Easements - Centre Street*

The permanent easement in which the pipeline will be installed in Centre Street will consist of a cylindrical area that is five (5) feet in diameter, will be approximately three to five feet below the surface, will be approximately 3,642 linear feet in length, and will occupy approximately 71,510 cubic feet. The temporary workspace easement in Centre Street will occupy approximately 181,036 square feet. The approximate boundaries of the permanent and temporary easements in Centre Street are depicted on Drawing Nos. LD-P-8193 - 8199. (Gessner Affid., ¶¶ 15-17; copies of those drawings are attached as Exhibit D to Gessner's Affid.).

### *Total Easement Areas - West Roxbury Streets*

The approximate aggregate areas of the easements in the West Roxbury Streets is as follows:

a. Permanent Easement – 170,197 cubic feet and 8,248 linear feet; and

b. Temporary Easement – 652,489 square feet.

***Algonquin has been Unable to Obtain the Right from the PIC
to Install its Pipeline in the West Roxbury Streets***

The PIC has established a process whereby a company can obtain the right to install a pipeline or similar utilities in Boston streets. (Behnke Affid., ¶ 7). Algonquin's lawyer opened discussions with PIC Legal Counsel, Chong Liu, on November 7, 2014 about an agreement that would allow Algonquin to install its pipeline in the West Roxbury Streets. (Behnke Affid., ¶ 8). Those discussions included several meetings with PIC Legal Counsel, a number of emails, and exchanges of drafts of a proposed agreement. (Behnke Affid., ¶¶ 8-22). Those discussions have not resulted in a final agreement. (Behnke Affid., ¶ 22). Moreover, a number of the PIC constituent agencies had not commented on or approved Algonquin's plans. (Behnke Affid., ¶ 20).

In a letter dated June 23, 2015 from Franklin S. Gessner, Algonquin's Principal Right-of-Way Manager to Michael D. Dennehy, the PIC Chairman, Mr. Gessner stated that:

> a majority of the PIC constituent agencies required to be consulted have not provided Algonquin with comments or the required responses on Algonquin's plans as necessary to enable Algonquin to file a full submission package and discussions between counsel have been very intermittent. Consequently, Algonquin and the PIC are not close to finalizing the Grant of Location and Algonquin is not close to being able to file an application with the PIC for a Grant of Location.
>
> Therefore, Algonquin has decided to pursue the purchase of the permanent and temporary easements it needs in the West Roxbury Streets to construct the Project. Enclosed please find a Grant of Easement for those easements. Also enclosed are Drawing Nos. LD-P-8183 - 8196 depicting the size and cylindrical nature of the permanent easements and the size of the temporary easements.

(Gessner Affid, ¶ 19; a copy of that letter is attached as Exhibit E to Gessner's Affid.)

Mr. Gessner's letter further stated that:

> Algonquin engaged an independent appraiser to estimate the value of the easements it needs in the West Roxbury Streets. The appraiser's estimate of value is $425,000. However, in an effort to avoid the filing of an eminent domain action against the City, Algonquin will pay $600,000 for the easements that Algonquin needs in the West Roxbury Streets. This offer is made solely for the purpose of settlement and does not in any way reflect what Algonquin's position will be if a trial on the value of the easements is necessary.
>
> This offer expires at the close of business on June 30, 2015. If the City intends to accept this final offer, please contact me at (781) 352-8653 or toll free at 866-871-0356.
>
> If the City does not accept Algonquin's offer, or fails to respond to the offer by June 30, then the next day, Algonquin will file a condemnation action to take the necessary easements in the United States District Court for the District of Massachusetts in Boston in accordance with the Natural Gas Act, 15 U.S.C. § 717f(h).
>
> Algonquin hopes that it will not be necessary to file the condemnation action and that it can reach an easement agreement with the City. Please be assured that even if Algonquin files a condemnation action, Algonquin will be willing to discuss such an agreement with the City up until the time that the Court holds a hearing on Algonquin's partial summary judgment motion. Algonquin looks forward to the City's response.

(Gessner Affid, Exhibit E). The PIC did not accept Algonquin's offer nor did it respond to Algonquin's proposed Grant of Easement. (Gesssner Affid., ¶ 19).

Algonquin's FERC Certificate states that "the authorized facility locations shall be shown in the final EIS [Environmental Impact Statement], as supplemented by filed alignment sheets . . . . Algonquin's exercise of eminent domain authority . . . . in any condemnation proceedings related to this order must be consistent with the these authorized facilities and locations."

(Gessner Affid., Exhibit A, p. 58).  The location of the permanent and temporary easements shown on Drawing Nos. LD-P-8183 - 8196 are consistent with the locations shown on alignment sheets approved by FERC. (Gessner Affid., ¶ 20).

## ARGUMENT

### I. Algonquin Is Entitled An Order Allowing Algonquin To Take The Easements In The West Roxbury Streets

Algonquin has commenced this condemnation action under NGA § 7(h), 15 U.S.C. § 717f(h), to take the easements it needs in the West Roxbury Streets. Section §717f(h) states, in relevant part, that:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way . . . it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State Courts.

Numerous federal courts have held that a natural gas company has the authority to take an easement or other property rights under § 717f(h) when the company satisfies three conditions: (1) a FERC Certificate authorizes the construction of the pipeline; (2) the use of the easement or parcel of land is necessary to comply with the Certificate; and (3) the company has been unable to acquire the necessary property interest by agreement with the landowner. *See, e.g., Ruby Pipeline, L.L.C. v. 0.768 Acres,* 2015 WL 2185441, at *4 (D.Nev. May 11, 2015); *Columbia Gas Transmission, LLC v. 10.5068 Acres of Land,* 2015 WL 1470698, at **4-5 (M.D.Pa. March 31, 2015); *Columbia Gas Transmission, LLC v. 1.092 Acres of Land,* 2015 WL 389402 at **3-4 (D.N.J. January 28, 2015); *Constitution Pipeline Co., LLC v. A Permanent Easement for 1.80*

*Acres,* 2015 WL 1638250, at *4 (N.D.N.Y. February 23, 2015); *Texas Eastern Transmission, LP v. 3.2 Acres Permanent Easement*, 2015 WL 152680, at **3-4 (S.D.Ohio January 12, 2015); *Columbia Gas Transmission, LLC v. 370.393 Acres of Land,* 2014 WL 5092880, at *3 (D.Md. Oct. 9, 2014); *Millennium Pipeline Company, LLC v. Certain Permanent and Temporary Easements*, 777 F.Supp. 2d 475, 479-480 (W.D.N.Y. 2011), *aff'd sub nom. Millennium Pipeline Co. v. Certain Permanent & Temp. Easements in (No No.) Thayer Rd., S.B.L. No. 63.00–1–24.1, Town of Erin, Cnty. of Chemung, New York,* 552 F. App'x 37 (2d Cir. 2014); *Perryville Gas Storage LLC v. 40 Acres of Land*, 2011 WL 4943318, at *2 (W.D. La. Oct. 17, 2011); *Tennessee Gas Pipeline Co. v. Mass. Bay Transp. Auth.,* 2 F.Supp.2d 106, 108-109 (D.Mass. 1998). *See also Columbia Gas Transmission, LLC v. 1.01 Acres,* 768 F.3d 300, 304 (3d. Cir. 2014) (noting that a FERC Certificate "gives its holder the ability to obtain automatically the necessary right of way through eminent domain").

    A.    **Algonquin Satisfies The Three Conditions Needed To Take The Easements In The West Roxbury Streets**

Algonquin is entitled to Order of Taking for the easements in the West Roxbury Streets because the undisputed facts establish that Algonquin satisfies all three conditions. First, as the holder of a FERC Certificate, Algonquin may exercise the federal power of eminent domain granted to natural gas companies by the NGA. (Gessner Affid., ¶ 17 & Exhibit A, p. 58). Second, Algonquin needs the easements in the West Roxbury Streets to install the pipeline along the route approved by FERC. (Gessner Affid., ¶ 8). Third, Algonquin has been unable to acquire the easements from the PIC by contract or agreement. (Behnke Affid., ¶ 22; Gessner Affid., ¶ 19).

B.     **This Court Cannot Entertain Any Challenges To Algonquin's Authority To Condemn The Easement Or To Algonquin's FERC Certificate**

FERC has determined that the Project is in the public interest and has approved the route of the AIM Project, the size of the pipeline, the size and location of the easements and a host of other matters relating to the construction and operation of the AIM Project. It is well settled that a FERC Certificate may not be collaterally attacked in a condemnation action because the NGA deprives a district court of jurisdiction over such matters. Thus, this Court's only role in this proceeding is to enforce Algonquin's FERC Certificate.

The NGA confers on FERC "exclusive jurisdiction" over the transportation and sale of natural gas in interstate commerce, as well as over the rates and facilities of natural gas companies engaged in such transportation and sale. *See, e.g., Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 306–08 (1988); *N. Natural Gas Co. v. Iowa Utils. Bd.*, 377 F.3d 817, 821 (8th Cir. 2004); *Nat'l Fuel Gas Supply Corp. v. Pub. Serv. Comm'n*, 894 F.2d 571, 576 (2d Cir. 1990). Consequently, the scope of judicial review of a FERC Certificate is very limited and is only available in certain courts of appeal. *See* 15 U.S.C. § 717r (review of a FERC certificate is the exclusive province of the appropriate court of appeals). The Sixth Circuit has explained that the NGA:

> sets forth a highly reticulated procedure for obtaining, and challenging, a FERC certificate to build an interstate pipeline. A party aggrieved by such an order may apply for rehearing before FERC. 15 U.S.C. § 717r(a). And no entity may seek judicial review of a FERC order unless it first sought rehearing from the agency. *Id.* Once FERC concludes the rehearing, the aggrieved party may petition for review either in the D.C. Circuit or in the circuit where the natural gas company is located or has its principal place of business—in this instance, the Third or Fifth Circuit. 15 U.S.C. § 717r(b); . . . The relevant court of appeals thereafter has "exclusive" jurisdiction "to affirm,

>       modify, or set aside [FERC's] order in whole or in part." 15 U.S.C. § 717r(b); see also 15 U.S.C. § 717r(d)(1). Exclusive means exclusive, and the Natural Gas Act nowhere permits an aggrieved party otherwise to pursue collateral review of a FERC certificate in state court or federal district court.

*Am. Energy Corp. v. Rockies Express Pipeline LLC*, 622 F.3d 602, 605 (6th Cir. 2010).

Thus, any type of collateral attack on a FERC Certificate cannot "be entertained by [a] federal district court. . . . The district court's function under the [NGA] is not appellate but, rather, to provide for enforcement" of the FERC Certificate. *Williams Natural Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 264 (10th Cir. 1989), *cert. denied*, 497 U.S. 1003 (1990). *See also Millennium Pipeline Co. v. Certain Permanent & Temp. Easements,* 777 F.Supp.2d at 481 ("[a] district court's role in proceedings involving FERC certificates is circumscribed by statute, and when a landowner contends that the certificate holder is not in compliance with the certificate, that challenge must be made to FERC, not the court"); *Kansas Pipeline Co. v. A 200 Foot By 250 Foot Piece of Land*, 210 F.Supp.2d 1253, 1256 (D.Kan. 2002) ("The district court lacks jurisdiction to review the validity and/or conditions of a FERC certificate"); *Guardian Pipeline, LLC v. 529.42 Acres of Land*, 210 F.Supp.2d 971, 974 (N.D.Ill. 2002) ("The jurisdiction of a [district] court is limited to evaluating the scope of the FERC Certificate and ordering condemnation as authorized by that Certificate"); *Tennessee Gas Pipeline Co. v. Mass. Bay Transp. Auth.*, 2 F.Supp.2d at 110 (district court's jurisdiction in an eminent domain action under the NGA is to "evaluate the scope of the FERC Certificate and order the condemnation of property in accordance with that scope"); *Kern River Gas Transmission Company v. Clark County*, 757 F.Supp. 1110, 1116 (D.Nev. 1990) (landowner may not challenge FERC-approved pipe line route in eminent domain proceeding arising under the NGA); *Tennessee Gas Pipeline Co. v. 104 Acres of Land, More or Less*, 749 F.Supp. 427, 430 (D.R.I. 1990) (challenges to a

FERC Certificate can be raised only by rehearing/appeal and landowner may not challenge a FERC Certificate in an eminent domain action arising under the NGA).

### C. The NGA Does not Require Algonquin to Engage in Good Faith Negotiations Prior to Exercising the Power of Eminent Domain

Section 717(h) of the NGA does not contain any requirement that a natural gas company must engage in good faith negotiations with a landowner prior to commencing a condemnation action and it is beyond this Court's purview to rewrite that section. Thus, it would be inappropriate for this Court to include a good faith requirement in the NGA when Congress did not do so. "[T]he sole function of the courts is to enforce [a statute] according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485 (1917). A court cannot go beyond or embellish the plain meaning of a statute "absent either undeniable textual ambiguity or some other extraordinary consideration, such as the product of yielding a patently absurd result." *Pritzker v. Yari*, 42 F.3d 53, 67-68 (1st Cir. 1994).

The First Circuit, among other courts, has stated that the NGA does not contain a good faith requirement. *See Maritimes & Northeast Pipeline, L.L.C. v. Decoulos*, 146 Fed. Appx. 495, 498 (1st Cir. 2005) ("Absent any credible authority making good faith negotiation a requirement precedent to the condemnation action, we decline the invitation to create one in this case"). *See also Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement Beneath 11.078 Acres,* No. 08–168, 2008 WL 4346405, at *13 n. 3 (W.D.Pa. Sept. 19, 2008) (stating that courts that have imposed a good-faith requirement "gave no explanation why they adopted such a requirement," that in none of the cases imposing such a requirement did the courts refuse to authorize condemnation on the ground that the FERC certificate holder had failed to negotiate in good faith, and concluding that "[t]he plain language of the NGA does not impose an obligation on a holder of a FERC certificate to negotiate in good faith before acquiring land by exercise of

eminent domain); *Northern Natural Gas v. Approx. 9119.53 Acres in Pratt, Kingman, and Reno Counties, Kansas*, 781 F.Supp.2d 1155, 1161 (D.Kan. 2011) ("plain language of the [NGA] contains no requirement of 'good faith' negotiations" and pipeline company's authority to condemn "does not depend upon such a showing"); *Kansas Pipeline Company v. A 200 Foot by 250 Foot Piece of Land,* 210 F.Supp.2d at 1257 (a good faith requirement would be contrary to the plain language of the NGA).

Moreover, FERC did not condition Algonquin's certificate upon Algonquin first engaging in "good faith" negotiations. In addition, there "is no FERC regulation or precedent requiring a condemnor to establish that negotiations were conducted in good faith." *Northern Natural Gas v. Approx. 9119.53 Acres in Pratt, Kingman, and Reno Counties, Kansas*, 781 F.Supp.2d at 1161, citing *Chestnut Ridge Storage LLC,* 128 FERC P 61210, 2009 WL 2750934 (Aug. 31, 2009) ("While we encourage parties to negotiate in good faith to reach easement agreements, we recognize that if the parties are unable to come to an agreement, then a certificate holder will be able to employ eminent domain to obtain necessary property rights under section 7h of the NGA."); *Midwestern Gas Transmission Company,* 116 FERC P 61182, 2006 WL 2461766, *15 (Aug. 25, 2006) ("In situations such as this, where, for whatever reasons, the pipeline company and property owners cannot agree on the terms and amount of compensation... section 7(h) of the NGA grants powers of eminent domain to the certificate holder."). Finally, Algonquin's Certificate contains the conditions upon which FERC granted Algonquin the authority to construct the AIM Project and those conditions do not include a requirement of good faith in negotiations by Algonquin.

Algonquin made an offer to the PIC to purchase the easements. The PIC may regard that offer as inadequate, but that does not affect Algonquin's "authorization to proceed with


condemnation. It is clear from undisputed facts that Algonquin has been unable to acquire the easements "by contract and is unable to agree with the [PIC] on compensation. That is all the NGA and the FERC Certificate require insofar as [Algonquin's] authority to proceed is concerned. *Northern Natural Gas v. Approx. 9119.53 Acres in Pratt, Kingman, and Reno Counties, Kansas*, 781 F.Supp.2d at 1162.

### 1. Algonquin has Made a Good Faith Effort to Purchase the Easements from the PIC

Nevertheless, there can be no doubt that if a good faith requirement exists, Algonquin has clearly satisfied that requirement. A pipeline company may satisfy the good faith requirement by demonstrating that it made an offer to purchase the property rights from the landowner prior to commencing condemnation proceedings and the landowner rejected that offer. *See, e. g., Alliance Pipeline L.P. v. 4.360 Acres of Land,* 746 F.3d 362, 367-368 (8th Cir. 2014) (company satisfied any duty it might have to negotiate in good faith when it made an offer to purchase the easement from the landowner and landowner never responded to the offer);. *Millennium Pipeline Company, LLC v. Certain Permanent and Temporary Easements*, 777 F.Supp. 2d at 483 (even if NGA requires a showing of good faith, company acted in good faith by making offers to purchase the easement and landowner showed no interest in discussing the purchase of the easement); *Tennessee Gas Pipeline Co. v. New England Power Co.,* 6 F.Supp.2d 102, 103 (D.Mass. 1998); *USG Pipeline Co. v. 1.74 Acres in Marion County, Tennessee,* 1 F.Supp.2d 816, 821-824 (E.D.Tenn. 1998) (pipeline company satisfied its obligation under the NGA where it engaged in negotiations with landowners and made monetary offers it considered reasonable); *Kern River Gas Transmission Company v. Clark County,* 757 F.Supp. at 1113 (holding that natural gas company had engaged in good faith negotiations where the parties had negotiated for several months prior to commencement of condemnation action).

From October, 2014 through June, 2015, Algonquin attempted to acquire the right from the PIC to install its pipeline in the West Roxbury Streets. (Behnke Affid., ¶¶ 8-22). When those efforts failed, Algonquin offered $600,000 to the PIC for the easements needed to install the pipeline. (Gessner Affid., ¶ 19 & Exhibit E). The PIC did not accept that offer. (Gessner Affid., ¶ 19). Thus, Algonquin clearly attempted in good faith to obtain the right from PIC to install its pipeline in the West Roxbury Streets.

## CONCLUSION

For the foregoing reasons, the Court should grant Algonquin's motion for partial summary judgment and enter an Order of Taking for the easements in the West Roxbury Streets.

ALGONQUIN GAS TRANSMISSION, LLC

By its attorneys,

/s/ *James T. Finnigan*
James T. Finnigan (BBO# 549620)
Rich May, P.C.
176 Federal Street
Boston, MA 02110
(617) 556-3872
Jfinnigan@richmaylaw.com

July 1, 2015